REPUBLIC AIRLINES, INC v DEPARTMENT OF TREASURY

Docket Nos. 96841, 96842. Submitted January 12, 1988, at Lansing. Decided July 5, 1988. Leave to appeal applied for.

Republic Airlines, Inc., and Northwest Airlines, Inc., foreign corporations engaged in air transportation of goods and persons in interstate commerce and doing business in the State of Michigan, paid taxes under Michigan's Single Business Tax Act for the years 1976 through 1982. In each of those tax years, after the phase-in discounts were applied, the airlines became subject to the minimum tax provision. The minimum tax provision computed tax liability solely on a percentage of gross receipts. Each airline paid its assessed Michigan tax liability in each of those years and then sought a refund of those payments, arguing that the minimum tax based upon gross receipts was invalid as applied against interstate air carriers since by federal mandate states could not either directly or indirectly impose upon an interstate air carrier a tax based on gross receipts. When the Department of Treasury Revenue Division denied the refund claims, the airlines brought an action in the Court of Claims seeking a refund of the taxes for 1976 through 1981. Northwest Airlines brought a separate action seeking a refund for 1982. The actions were consolidated. Both plaintiffs and defendant moved for summary disposition. The trial court, Michael G. Harrison, J., held that the minimum tax provision was invalid in the face of the federal statute, but that the invalidity of the minimum tax provision did not render the state's power to tax invalid, it only rendered the subsection containing the phase-in discounts and minimum tax provision invalid. Defendant appealed. Plaintiffs cross-appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, State and Local Taxation §§ 392 *et seq.*, 423.

Validity, under commerce clause of Federal Constitution, of state gross receipts or income taxes involving interstate transactions—Supreme Court cases. 34 L Ed 2d 749.

1. The minimum tax provision clearly computes taxes solely on the basis of gross receipts and is thus preempted by the federal statute which prohibits the imposition by a state of a tax based on the gross receipts of an interstate air carrier.

2. The minimum tax provision can be logically severed from the phase-in discount provision. Plaintiffs' tax liability should therefore be computed by use of the phase-in discounts but without resorting to the minimum tax provision.

Affirmed in part, reversed in part.

1. TAXATION — SINGLE BUSINESS TAX — AIRLINES — GROSS RECEIPTS — FEDERAL PREEMPTION.

The minimum tax provision of the Single Business Tax Act is a tax on gross receipts; accordingly, the minimum tax provision may not be levied against airlines engaged in air transportation of goods and persons in interstate commerce for profit, since the federal Airport Development Acceleration Act prohibits the states from imposing on interstate commercial air carriers a tax based on gross receipts (MCL 208.57[3]; MSA 7.558[57][3]; 49 USC 1513).

2. TAXATION — SINGLE BUSINESS TAX — AIRLINES — FEDERAL PREEMPTION — STATUTES.

The minimum tax provision of the Single Business Tax Act can be logically severed from the phase-in discounts contained in the same section of the act, since it is clear that the Legislature intended to grant the phase-in discounts to prevent hardship for a limited period of time; accordingly, the fact that the minimum tax provision is rendered unenforceable as a matter of federal preemption with respect to interstate air carriers does not also render the phase-in discount provision invalid (MCL 208.57[3]; MSA 7.558[57][3]; 49 USC 1513).

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Ernest Getz, Thomas D. Hammerschmidt, Jr.,* and *Robert T. Smith*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Terry P. Gomoll,* Assistant Attorneys General, for defendant.

Before: Shepherd, P.J., and Wahls and G. B. Ford,* JJ.

Shepherd, P.J. Defendant appeals a Court of Claims November 7, 1986, final judgment denying defendant's motion for summary disposition under GCR 1963, 117.2(1), now MCR 2.116(C)(8), and partial accelerated judgment under GCR 1963, 116.1(5), now MCR 2.116(C)(7). Plaintiffs cross-appeal from the judgment denying their motion for summary disposition under MCR 2.116(C)(10).

Both plaintiffs are foreign corporations engaged in air transportation of goods and persons in interstate commerce for profit. The question in this case involves the tax liability of plaintiffs in the years 1976 through 1982 under Michigan's Single Business Tax Act, MCL 208.1 et seq.; MSA 7.558(1) et seq.

When adopted in 1975, the sbta was characterized as a value added tax. Kasischke, *Computation of the Single Business Tax: Theory and Mechanics,* 22 Wayne L Rev 1069 (1976). The single business tax is essentially a tax on the increase in value of goods and services brought about by the taxpayers' business activities. See *Stockler v Dep't of Treasury,* 75 Mich App 640, 643; 255 NW2d 718 (1977). This Court described the tax as a "new and experimental piece of legislation" shortly after its adoption. *Id.* Apparently aware that the adoption of the sbta marked a shift in tax procedure and policy which might have an unfair adverse impact on the tax burden of some businesses, the Legislature incorporated in the act certain transitory provisions for some industries, including the transportation industry. In a previous case we concurred in the following view:

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

In his written opinion, the Tax Tribunal judge explained the rationale behind § 57:

"[T]he Legislature recognized that some businesses such as transportation are more adversely affected by the new Single Business Tax Act than others. Therefore, a phase-in was created [*i.e.,* § 57(3)], by allowing a discounting of the Michigan tax base [as determined under § 57(1)] until 1983." [*Eagle Trucking Co v Dep't of Treasury,* 115 Mich App 667, 671; 321 NW2d 765 (1982).]

The act provides for a "specific tax of 2.35 per cent upon the adjusted tax base of every person with business activity in this state which is allocated or apportioned to the state." MCL 208.31(1); MSA 7.558(31)(1). The tax base apportioned to Michigan for transportation companies, including plaintiffs, subject to SBTA § 31(1) taxation, is computed pursuant to SBTA § 57(1), MCL 208.57(1); MSA 7.558(57)(1), which reads:

In the case of a taxpayer under section 56 other than one whose activity consists of the transportation of oil or gas by pipeline, the tax base attributable to Michigan sources shall be that portion of the tax base of the taxpayer derived from transportation services wherever performed that the revenue miles of the taxpayer in Michigan bear to the revenue miles of the taxpayer everywhere. A revenue mile means the transportation for a consideration of 1 net ton in weight or 1 passenger the distance of 1 mile. The tax base attributable to Michigan sources in the case of a taxpayer engaged in the transportation both of property and of individuals, shall be that portion of the entire tax base of the taxpayer which is equal to the sum of his passenger miles and ton mile fractions, separately computed and individually weighted by the ratio of gross receipts from passenger transportation to total gross receipts from all transportation, and by the ratio of gross receipts from freight

transportation to total gross receipts from all transportation, respectively.

Section 57(3), MCL 208.57(3); MSA 7.558(57)(3), however, provides for a percentage discounting of the transportation company's tax base over a five year phase-in period:

(3) The tax base attributable to this state shall be the following percentage of the tax base otherwise computed under subsection (1): 30% for the 1977, 1978, and 1979 tax years; 70% for the 1980 and 1981 tax years; and 90% for the 1982 tax year.

The phase-in percentage discount was, however, limited by a "minimum tax" in § 57(3). The rest of § 57(3) reads:

The tax computed shall not be less than an amount equal to the 5-year average tax liability measured as a percentage of gross receipts, determined by computing the percentage that the taxpayer's liability for the taxes levied under Act No. 85 of the Public Acts of 1921, as amended, being sections 450.304 to 450.310 of the Michigan Compiled Laws, Act No. 281 of the Public Acts of 1967, as amended, being sections 206.1 to 206.532 of the Michigan Compiled laws, Act No. 301 of the Public Acts of 1939, as amended, being sections 205.131 to 205.147 of the Michigan Compiled Laws, and the tax levied on the inventory portion of personal property under Act No. 206 of the Public Acts of 1893, as amended, being sections 211.1 to 211.157 of the Michigan Compiled Laws, or Act No. 282 of the Public Acts of 1905, as amended, being sections 207.1 to 207.21 of the Michigan Compiled Laws, bears to the gross receipts of the taxpayer. The 5-year average tax liability under this subsection shall be computed and determined from the 1971 to 1975 tax years. For the tax years begin-

ning after December 31, 1976, the percentage established for the 5-year average liability for the 1976 tax year shall be used for calculating this minimum tax. This subsection shall expire December 31, 1982.

Plaintiffs' tax liability was ultimately based on the latter clause. Plaintiffs are engaged in air transportation of goods and persons in interstate commerce for profit. As such, both plaintiffs are subject to the provisions of the Airport Development Acceleration Act of 1973, codified at 49 USC 1513, which reads in pertinent part:

(a) No State . . . shall levy or collect a tax, fee, head charge, or other charge, *directly or indirectly,* on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation *or on the gross receipts derived therefrom* . . . .

(b) Nothing in this section shall prohibit a State (or political subdivision thereof, including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States or political agencies of two or more States) from the levy or collection of taxes other than those enumerated in subsection (a) of this section, including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services. . . .

Plaintiffs argue that the minimum tax provision of the SBTA is in violation of the federal prohibition on a direct or indirect tax on gross receipts.

Plaintiffs commenced this action under § 88 of the SBTA, MCL 208.88; MSA 7.558(88), to recover single business taxes assessed on that portion of business activities in Michigan for the tax years 1976 through 1981. The total amount sought is $1,573,160.36, reflecting the tax, interest and pen-

alties assessed during the years 1976 through 1982. The assessments were computed by application of the minimum tax provision within § 57(3). Both plaintiffs filed amended returns seeking refunds. The Department of Treasury denied plaintiffs' refund claims. On March 19, 1984, plaintiffs filed a complaint in the Court of Claims seeking refunds.

In their complaint, plaintiffs alleged that the minimum tax provision of § 57(3) of the SBTA violated the provisions of 49 USC 1513 in that the minimum tax requirement of § 57(3) was an indirect tax on plaintiffs' gross receipts in violation of the prohibition against a direct or indirect state tax on gross receipts contained in the federal statute. Northwest Airlines filed a subsequent complaint seeking a refund for the single business taxes paid in 1982.

The cases were consolidated in the Court of Claims. On September 19, 1984, the Court of Claims heard cross-motions for summary judgment pursuant to GCR 1963, 117.2(3) filed by plaintiffs and defendant, as well as a motion for summary judgment pursuant to GCR 1963, 117.2(1) and partial accelerated judgment pursuant to GCR 1963, 116.1(5) filed by defendant. On April 1, 1985, the court issued its opinion and order. Pertinent to the present appeal, the court ruled that the minimum tax calculated under § 57(3) of the SBTA violated the federal prohibition on taxes on gross receipts found in 49 USC 1513 and was therefore preempted. Accordingly, the Court of Claims denied defendant's motion for summary judgment, but the court declined to address the cross-motions under GCR 1963, 117.2(3).

Plaintiffs filed a subsequent motion for summary disposition, in order to determine the effect given to the remaining portion of § 57(3) in the absence

of the preempted minimum tax provision. In a June 30, 1986, written opinion, the Court of Claims ruled that the phase-in discount language of § 57(3) could not be given effect without also giving effect to the minimum tax provision, because to do so would be inconsistent with the Legislature's intent. Concluding that the minimum tax was an integral part of § 57(3), the court reasoned that to allow the allocation of the discount without the minimum would amount to an unwarranted expansion of a tax exemption. The court concluded:

> There is no evidence to indicate [an] intent to allow an expansion of the exception, it must be concluded that the expansion of the tax reduction would be contrary to the legislative intent.

The court also rejected plaintiffs' argument that all of § 57 should be declared invalid. The court ruled that plaintiffs' tax liability should be computed using § 57(1) only, i.e., without computing either the discount or the minimum tax.

Defendant appeals the court's ruling on the preemption of the minimum tax provision and plaintiffs cross-appeal the court's ruling that the § 57(3) discount without the application of the minimum tax provision was violative of legislative intent.

I

We first address the issue whether the minimum tax provision of § 57(3) of the SBTA is preempted by the federal statute. Defendant puts forward several arguments in the face of the plain language of the federal statute which would seemingly invalidate the minimum tax provision of § 57(3). Again,

for purposes of clarity, 49 USC 1513 states in pertinent part:

> (a) No State . . . shall levy or collect a tax, fee, head charge, or other charge, *directly or indirectly,* on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation *or on the gross receipts derived therefrom.* . . .

The state's argument is to the following effect:

(1) Taxes under the SBTA are levied upon the privilege of doing business in Michigan, not on the taxpayer's gross receipts which are only a factor in the measurement of its liability;

(2) The purpose of § 57(3) was to provide transportation companies with a transition period to adjust to possible increases in their Michigan tax liability in the advent of the SBTA;

(3) The purpose of the "minimum tax" in § 57(3) was to ensure that transportation companies did not pay proportionately less than they had paid under the previous tax scheme;

(4) The "minimum tax" is not preempted by the prohibition in 49 USC 1513 because:

(a) the purpose of the federal statute was directed at the proliferation of state and local taxes directed at air transportation;

(b) the minimum tax was not enacted as a specific tax on air transportation; and

(c) the minimum tax was not a tax on gross receipts, rather, gross receipts is merely a factor in the formula to ensure that the tax liability of transportation companies under the SBTA was comparable to their liability under the previous tax scheme.

In *Aloha Airlines, Inc v Director of Taxation of Hawaii,* 464 US 7; 104 S Ct 291; 78 L Ed 2d 10

(1983), the Supreme Court was required to determine whether 49 USC 1513(a) preempted a Hawaiian statute that imposed a tax on gross income of the airlines operating within the state. Conceding that the phrase "gross income" was synonymous with the phrase "gross receipts" used in the federal statute, the director of taxation nonetheless argued that the Hawaiian statute was a property tax, measured by gross receipts, not a tax on gross receipts itself, and, therefore, should escape preemption under the exemption in 49 USC 1513(b) for property taxes. The Supreme Court held, 464 US 13-14:

> The manner in which the state legislature has described and categorized § 239-6 [footnote 9 omitted] cannot mask the fact that the purpose and effect of the provision are to impose a levy upon the gross receipts of airlines. Section 1513(a) expressly prohibits its States from taxing "directly or indirectly" gross receipts derived from air transportation. Beyond question, a property tax that is measured by gross receipts constitutes at least an "indirect" tax on the gross receipts of airlines. A state statute that imposes such a tax is therefore pre-empted.[10]

---

[10] The unambiguous proscription contained in § 1513(a) compels us to conclude that it pre-empts Haw Rev Stat § 239-6 as well as other state taxes imposed on or measured by the gross receipts of airlines. Amici point out that several States have taxation statutes similar to § 239-6 and that the ability of those States to retain revenues collected from airlines during the past decade will be affected by our decision today.

---

Cf. *Air Transport Ass'n of America v New York State Dep't of Taxation & Finance,* 91 AD2d 169; 458 NYS2d 709 (1983), aff'd 453 NY2d 548 (1983); *Arizona Dep't of Revenue v Cochise Airlines,* 128 Ariz 432; 626 P2d 596 (Ariz App, 1980).

We can find nothing in the instant case to

distinguish it from the logic and result of *Aloha Airlines, Inc.* The minimum tax is computed as a direct measure of gross receipts and is therefore preempted by 49 USC 1513(a). Any increase in gross receipts during the transition year resulted in a concomitant increase in a transportation company's potential tax liability. Plaintiffs' tax liability was measured as a percentage of its gross receipts during the years in question. Such a measurement constitutes a direct or indirect tax on gross receipts prohibited by the federal statute.

II

Equally significant for the parties in this case is the second issue. Given that the minimum tax provision of § 57(3) is preempted, we still must determine whether to give effect to the percentage discount provided for in § 57(3) or whether plaintiffs should be assessed on their tax base apportioned to Michigan under § 57(1) without regard to the § 57(3) discount. In other words, we must determine whether the minimum tax provision is severable from § 57(3) or whether the invalidity of the minimum tax provision renders the entire subsection invalid.

Defendant argues, and the Court of Claims found, that the whole of § 57(3) was rendered invalid by reason of the fact that the minimum tax provision was preempted. While conceding that § 57(3) was designed to grant transportation companies a transition period to adapt to the new SBTA, defendant argues that the minimum tax was an inseverable limitation on the percentage reduction available to transportation companies.

The question is one of severability. MCL 8.5; MSA 2.216 provides:

In the construction of the statutes of this state

the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:

If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

When a part of an act is invalid in all possible applications, the invalid portion may be deleted and the court may determine by rules of legislative intent whether the valid portion of the act shall be enforced. 2 Sutherland, Statutory Construction (4th ed), § 44.12, p 519. Cf. *Pletz v Secretary of State*, 125 Mich App 335, 375-376; 336 NW2d 789 (1983), lv den 417 Mich 1100.20 (1983). The law enforced after separation must be reasonable in light of the act as originally drafted. 2 Sutherland, Statutory Construction (4th ed), § 44.04, p 489. Independence of the valid from invalid parts of an act does not depend on their being located in separate sections. *Id.,* p 490. When the general object of the act can be achieved without the invalid part, the act will be upheld. *Id.,* § 44.07, p 503.

We find the reasoning in an earlier severance case instructive. In *American Youth Foundation v Benona Twp,* 37 Mich App 722; 195 NW2d 304 (1972), lv den 387 Mich 782 (1972), plaintiff was denied tax exempt status on the basis of language in the then extant property tax exemption statutes which allowed certain exemptions for property owned and occupied by certain institutes *incorporated under the laws of this state.* Plaintiff was an

out-of-state corporation. Following a United States Supreme Court case holding that it was a denial of equal protection to deny otherwise qualified corporations tax exempt status on the basis of their status as foreign corporations, see *WHYY v Glassboro,* 393 US 117; 89 S Ct 286; 21 L Ed 2d 242 (1968), plaintiff again challenged denial of tax exempt status for its property. Defendant acknowledged that the clause was unconstitutional but argued that the exemption statutes containing the clause were wholly invalid, as applied to both domestic and foreign corporations. This Court disagreed. Concluding that the offending phrase should be severed from the exemption statutes, the Court reasoned:

> The clear and express intention of the Legislature was to exempt *domestic,* nonprofit corporations from taxation. Such a clear expression can be upheld by this Court. Those portions of the statutes in question which remain after severing the "domestic corporation" proviso are still operable and can still implement the intent manifested by the Legislature. [37 Mich App 725.]

That reasoning is equally applicable here. Clearly the Legislature intended to grant transportation companies a reduction in tax liability during the phase-in period based on the perception that the adoption of the SBTA would create substantial uncertainty as to their tax burden. We believe the intent of the Legislature can be implemented by severing the preempted provision. To adopt the interpretation on severability urged on us by defendant would have an adverse impact on those companies unaffected by the minimum tax but whose tax liability was otherwise governed by § 57(3). Such an interpretation would adversely

affect the many transportation companies who received a percentage reduction in their tax liability pursuant to § 57(3) and in accord with the Legislature's manifest intent, but whose discount did not fall below the minimum. These companies remained unaffected by the minimum tax but received discounts pursuant to statute. We believe the discount reflects the legitimate intent of the Legislature to grant phase-in discounts to prevent hardship for a limited period. This intention is not identical to the concept of a minimum tax, and the two concepts can be logically severed. We therefore reverse the decision of the Court of Claims and remand for a determination of plaintiffs' tax liability without the application of the invalid minimum tax provision.

Affirmed in part, reversed in part and remanded.