CATERPILLAR, INC v DEPARTMENT OF TREASURY

Docket No. 119584. Submitted May 17, 1990, at Lansing. Decided February 5, 1991, at 9:10 A.M. Limited leave to appeal granted, 439 Mich 857.

Caterpillar, Inc., a Delaware corporation, brought an action in the Court of Claims against the Department of Treasury, seeking to recover single business taxes paid from 1981 through 1984. The plaintiff contended that subsections 23(a) and (c) of the Single Business Tax Act, MCL 208.23(a), (c); MSA 7.558(23) (a), (c), violated the Commerce Clause of the United States Constitution because the provisions allowed Michigan-based companies capital acquisition deductions for depreciable tangible personal and real property from their tax bases in amounts greater than those allowed companies not based in Michigan. The court, Thomas L. Brown, J., ruled that subsections 23(a) and (c) were unconstitutional, severed the provisions from the act, and gave prospective application to its decision, thereby denying the plaintiff a refund. The plaintiff appealed.

The Court of Appeals *held:*

The Court of Claims correctly determined that its decision regarding the constitutionality of subsections 23(a) and (c) should apply prospectively. Subsections 23(a) and (c) need not be severed entirely from the act. The proper remedy is to sever only the offending portions of the subsections.

1. A three-pronged test is employed to determine whether a decision under the Commerce Clause is to be given retrospective or prospective application. First, to be applied prospectively, the decision must establish a new principle of law, either by overruling clear precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, the merits and demerits in each case must be weighed by looking at the history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its opera-

REFERENCES

Am Jur 2d, Constitutional Law §§ 256, 258, 260, 261, 265, 267; State and Local Taxation §§ 1065, 1066.

See the Index to Annotations under Constitutional Law; Refund and Repayment; Retrospective Operation and Laws; Taxes.

tion. Third, the inequity imposed by retroactive application must be weighed, and where it might produce substantial inequitable results if applied retroactively, injustice or hardship is to be avoided by a holding of prospectivity. The Court of Claims decision satisfies the requirements for prospective application. The question of the constitutionality of the capital acquisition deduction was an issue of first impression whose resolution was not clearly foreshadowed, prospective application of the decision will not retard the purpose of the Commerce Clause of protecting interstate trade from interference by the states, and retrospective application could impose devastating financial and administrative burdens on the state.

2. MCL 205.30(1); MSA 7.657(30)(1), which provides that the Department of Treasury shall credit or refund taxes erroneously assessed and collected, found to be unjustly assessed, excessive in amount, or wrongfully collected, affords no relief where a decision applies prospectively.

3. Severing subsections 23(a) and (c) in their entirely from the Single Business Tax Act is not reasonable in light of the act as originally drafted. The capital acquisition deduction is what makes the single business tax a consumption-type, value-added tax, subjecting depreciation of capital goods to the single business tax and granting an investment credit for the acquisition of capital goods. The Legislature clearly intended to permit investment credits for the cost of apportioned depreciable personal property and depreciable real property located in Michigan. Therefore, only the last sentence of § 23(a), containing the two-factor apportionment formula, and the phrase "provided that the assets are physically located in Michigan" from § 23(c) need be severed from the act.

Modified.

1. Constitutional Law — Statutes — Commerce Clause — Prospective Application.

A court, in deciding whether to apply its decision invalidating a statute as being violative of the Commerce Clause prospectively or retrospectively, must determine whether the decision establishes a new principle of law, either by overruling clear precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; must weigh the merits and demerits of the case by looking at the history of the statute, its purpose and effect, and whether retrospective operation will further or retard its operation; and must weigh the inequity imposed by retroactive application; where a decision might produce substantial ineq-

uity if applied retroactively, injustice or hardship is to be avoided by a holding of prospectivity (US Const, art I, § 8).

2. TAXATION — REFUNDS OR CREDITS — STATUTES.

The statutory provision that the Department of Treasury must credit or refund taxes erroneously assessed and collected, found to be unjustly assessed, excessive in amount, or wrongfully collected, affords no relief where a court decision invalidating a tax is given prospective application (MCL 205.30[1]; MSA 7.657[30][1]).

3. STATUTES — JUDICIAL CONSTRUCTION.

If a portion of an act or its application is found to be invalid by a court, that portion or application should not affect the remaining portions or applications which can be given effect by severing the invalid portion or application; after severance the valid portion or application of the act must be reasonable in light of the act as originally drafted (MCL 8.5; MSA 2.216).

*McDermott, Will & Emery* (by *John S. Pennell, Don S. Harnack, Richard A. Hanson, Gregory G. Palmer,* and *Carol S. Portman*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Richard R. Roesch* and *Terry P. Gomoll,* Assistant Attorneys General, for the defendant.

Amicus Curiae:

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, J. Walker Henry, Thomas S. Nowinski,* and *Joseph A. Bonventre*), for Michigan Manufacturers Association.

Before: SULLIVAN, P.J., and WAHLS and JANSEN, JJ.

PER CURIAM. Following a bench trial, the Court of Claims essentially made three rulings: (1) the capital acquisition deduction (CAD) provisions of the Single Business Tax Act (SBTA) violate the

Commerce Clause of the federal constitution, US Const, art I, § 8; (2) under both state and federal law, its decision with regard to the constitutionality of the CAD applies prospectively; and (3) the correct remedy is to sever the CAD provisions from the act. Plaintiff appeals the court's latter two rulings. We affirm in part and modify in part.

A brief background on the SBTA and the CAD deductions is in order. The SBTA, enacted as 1975 PA 228, MCL 208.1 *et seq.*; MSA 7.558(1) *et seq.,* was "new and experimental legislation in this state." *Town & Country Dodge, Inc v Dep't of Treasury,* 420 Mich 226, 234; 362 NW2d 618 (1984). The SBTA imposes a value-added tax using a consumption-type base. *Mobil Oil Corp v Dep't of Treasury,* 422 Mich 473, 496; 373 NW2d 730 (1985). A taxpayer's tax base is defined as business income before apportionment subject to certain adjustments. MCL 208.9(1); MSA 7.558(9)(1). One of the adjustments includes adding depreciation paid by the taxpayer to the extent deducted from federal taxable income. MCL 208.9(4)(c); MSA 7.558(9) (4)(c); *Trinova Corp v Dep't of Treasury,* 433 Mich 141, 150; 445 NW2d 428 (1989), cert gtd — US —; 110 S Ct 1317; 108 L Ed 2d 492 (1990). After the initial tax base is determined, it is apportioned between Michigan and other states in which the taxpayer does business. Once apportioned, the tax base is then subject to certain adjustments. *Id.,* pp 151-152; *Mobil Oil, supra,* p 476.

One of the adjustments is the CAD at issue in this case—MCL 208.23; MSA 7.558(23). The CAD allows a taxpayer to deduct the cost of depreciable tangible assets, including both personal and real property. MCL 208.23(a); MSA 7.558(23)(a) employs a two-factor formula—payroll factor plus the property factor—to determine the proper deduction for personal property capital acquisitions. MCL

208.23(c); MSA 7.558(23)(c) provides for the deduction of the cost of real property located in Michigan.[1] The CAD is what makes the single business tax a consumption-type value-added tax: The SBTA allows a deduction of the "purchase price paid for the capital goods—but then taxes its depreciation." *Mobil Oil, supra,* pp 496-497, n 14.

. In this case, plaintiff Caterpillar, Inc., a Delaware corporation with its principal place of business located in Peoria, Illinois, sought to recover the single business taxes it paid in the years 1981-84. One of its arguments was that § 23 violated the Commerce Clause because Michigan-based companies received a larger CAD than non-Michigan-based companies because they were located in Michigan.

The Court of Claims agreed. After reviewing United States Supreme Court decisions involving

[1] After allocation as provided in section 40 or apportionment as provided in section 41, the tax base shall be adjusted by the following:

(a) Deduct the cost, including fabrication and installation, paid or accrued in the taxable year of tangible assets of a type which are, or under the internal revenue code will become, eligible for depreciation, amortization, or accelerated capital cost recovery for federal income tax purposes excluding costs of assets which are defined in section 1250 of the internal revenue code, except that for tangible assets which are subject to a lease back agreement under section 168(f)(8) of the internal revenue code, the deduction shall be allowed only to the lessee or sublessee as the case may be under the 168(f)(8) agreement. This deduction shall be multiplied by a fraction, the numerator of which is the payroll factor plus the property factor and the denominator of which is 2.

\*   \*   \*

(c) Deduct the cost, including fabrication and installation, excluding the cost deducted under subdivision (a) paid or accrued in the taxable year of tangible assets of a type which are, or under the internal revenue code will become eligible for depreciation, amortization, or accelerated capital cost recovery for federal income tax purposes, provided that the assets are physically located in Michigan. [MCL 208.23(a), (c); MSA 7.558(23)(a), (c).]

violations of the Commerce Clause, the Court of Claims held that "[t]he greater CAD is allowed to Michigan-based companies solely because of the location of their businesses," and, thus, that subsections 23(a) and (c) discriminate against non-Michigan-based companies in violation of the Commerce Clause. Because, the Court of Claims held, the Supreme Court "has not invalidated a deduction provision as contrasted with an unconstitutional credit provision" on the basis of the Commerce Clause, the issue was novel and one of first impression. Therefore, the court applied its ruling prospectively. It further severed subsections 23(a) and (c) from the SBTA.

We begin by noting that the Attorney General did not cross appeal the Court of Claims ruling that subsection 23(a) and (c) violate the Commerce Clause. That issue, therefore, is not before us. See, e.g., *Peisner v The Detroit Free Press, Inc,* 421 Mich 125, 129, n 5; 364 NW2d 600 (1984); *Pontiac Twp v Featherstone,* 319 Mich 382, 390; 29 NW2d 898 (1947). Instead, the issues before us are whether the Court of Claims decision operates prospectively or retrospectively and what is the appropriate remedy. Although interrelated, these are distinct issues. See *American Trucking Ass'ns, Inc v Smith,* 495 US —; 110 S Ct 2323, 2331, 2333; 110 L Ed 2d 148, 159, 161 (1990) (plurality opinion of Justice O'Connor); Ervin & Giddings, *Supreme court distinguishes remedy and retroactivity issues affecting state taxes,* 73 Journal of Taxation 296, 297 (1990).

We now turn to the issue whether the Court of Claims decision operates prospectively or retrospectively. Plaintiff urges that, under both federal and state law, the decision operates retrospectively. If the Court of Claims decision operates retrospectively under federal law, then we cannot

apply the decision prospectively on the basis of state law. To do so would frustrate federal law because the Court of Claims decision was based on federal law—the Commerce Clause. See Ervin & Giddings, p 298. Therefore, we first engage in an analysis under federal law.

In determining whether a decision under the Commerce Clause applies retrospectively, i.e., "applies to conduct or events that occurred before the date of the decision," four justices of the Supreme Court in *American Trucking Ass'ns* applied the three-part test announced in *Chevron Oil Co v Huson,* 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971):

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, . . . we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. Finally, we [must] weig[h] the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity. [*American Trucking Ass'ns, supra,* 110 L Ed 2d 160, quoting *Chevron Oil,* 404 US 106-107.]

The first prong is the threshold inquiry. If it is not satisfied, the other two prongs are irrelevant. See, e.g., *Ashland Oil, Inc v Caryl,* 497 US —; 110 S Ct 3202; 111 L Ed 2d 734 (1990).

We conclude that the three-pronged test is satisfied in this case. First, although the Court of

Claims decision obviously did not overrule clear precedent, it was an issue of first impression whose resolution was not "clearly foreshadowed." The question of constitutionality of the CAD is one of first impression. Moreover, as noted earlier, the SBTA "was new and experimental legislation in this state." *Town & Country Dodge, supra,* p 234. We also believe that the method of determining the CAD—especially for personal property—is unique. A similar deduction has never been declared to be unconstitutional. We therefore do not believe that it was "clearly foreshadowed" that subsections 23(a) and (c) would be declared unconstitutional. Cf. *McKesson Corp v Div of Alcoholic Beverages & Tobacco,* 495 US —; 110 S Ct 2238; 110 L Ed 2d 17 (1990); *Ashland Oil, supra; Allis-Chalmers Corp v North Bonneville,* 113 Wash 2d 108, 117; 775 P2d 953 (1989).

We also believe that the second and third prongs of the *Chevron Oil* test are met in this case. The Commerce Clause created an area of trade free from interference by the states. *American Trucking Ass'ns, Inc v Scheiner,* 483 US 266, 280; 107 S Ct 2829; 97 L Ed 2d 226 (1987); *Nat'l Can Corp v Washington Dep't of Revenue,* 109 Wash 2d 878, 888; 749 P2d 1286 (1988), app dis 486 US 1040 (1988). Here though, "whatever chill was imposed on interstate trade is in the past." *Nat'l Can Corp, supra,* pp 888-889. Because the Court of Claims declared that the CAD violated the constitution and a remedy is in order, the purpose of the Commerce Clause will not be retarded by prospective application. Nor will prospective application tend to encourage future free-trade violations. Again, the SBTA and CAD are unique. The state now has more guidance on how to structure the SBTA and CAD so as not to violate the Commerce Clause. Retroactive application of the Court of Claims decision would

be more in the nature of a punitive award for trying to better state taxation schemes.

Finally, retrospective application could be potentially devastating for the state, both financially and administratively. See, e.g., *American Trucking Ass'ns v Smith, supra,* 110 S Ct 2333; 110 L Ed 2d 162-163. Because the CAD presumably had gone unchallenged for a long period after its enactment and because, as previously discussed, the Court of Claims decision was one of first impression and was not "clearly foreshadowed," we believe that the equities favor prospective application.[2]

Plaintiff also argues that state law requires retrospective application of the Court of Claims decision. We disagree. Plaintiff failed to cite any Michigan case law to support its position. Moreover, we note that courts in our state previously have declined to apply a decision retrospectively where in doing so we would create an undue hardship or severe burden on the government. See *Washtenaw Co v State Tax Comm,* 422 Mich 346, 378-380; 373 NW2d 697 (1985), *Penn Mutual Life Ins Co v Dep't of Licensing & Regulation,* 162 Mich App 123, 133-134; 412 NW2d 668 (1987), and *Moorehouse v Ambassador Ins Co, Inc,* 147 Mich App 412, 421; 383 NW2d 219 (1985). Retrospective application of the Court of Claims decision would create such a result in this case. Financial and administrative burdens could be insurmountable.

In arguing that state law requires retrospective application, plaintiff does, however, rely on MCL 205.30(1); MSA 7.657(30)(1), which provides:

[2] We acknowledge that only four justices approved the application of the *Chevron Oil* test in *American Trucking Ass'ns v Smith, supra.* The four dissenters in that case would require retrospective application of the Court of Claims decision under a different analysis. We would anticipate the swing vote in that case, Justice Scalia, to call for prospective application in the case before us. It is impossible for us to anticipate how Justice Souter, who was not a member of the Court when the case was decided, would decide the issue.

The department [of treasury] shall credit or refund all overpayment of taxes, all taxes, penalties, and interest erroneously assessed and collected, and all taxes, penalties, and interest that are found unjustly assessed, excessive in amount, or wrongfully collected with applicable interest at the rate established in section 23(2).

Plaintiff does not cite any cases interpreting this language.

The Washington Supreme Court confronted an identical argument under its state refund statutes in *Nat'l Can Corp, supra.* In rejecting the argument, the court explained that if a court decision striking down a tax statute is applied prospectively, then for the purpose of applying the refund statutes, it is as if the taxes which were collected before the statute was found to be unconstitutional were constitutionally collected. The court concluded that the statutory argument "ignores the very meaning of prospective application." 109 Wash 2d 880-881.

We adopt the Washington Supreme Court's holding in this case. We believe that the first question to be addressed is when does a decision begin to operate. If it has retrospective application, then the refund statute may afford the appropriate remedy. However, the refund statute does not afford any relief if a decision operates prospectively.

Finally, we must determine the appropriate prospective "remedy." The Court of Claims severed subsections 23(a) and (c) from the sbta. We believe that the court went beyond what was appropriate. Our conclusion is governed by MCL 8.5; MSA 2.216—the severability clause:

In the construction of the statutes of this state the following rules shall be observed, unless such

construction would be inconsistent with the manifest intent of the legislature, that is to say:

If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

The law enforced after an invalid portion of an act is severed must be reasonable in light of the act as originally drafted. *Republic Airlines, Inc v Dep't of Treasury,* 169 Mich App 674, 685; 427 NW2d 182 (1988).

Here, the Court of Claims severed the CAD—deductions for depreciable tangible personal and real property—§ 23(a) and (c). However, as explained earlier in this opinion, subjecting depreciation of capital goods to the single business tax and giving an "investment credit" for the acquisition of capital goods—§ 23(a) and (c)—is what gives the single business tax its consumption-type nature. *Mobil Oil, supra,* pp 496-497, n 14. Moreover, the Legislature clearly intended to permit "investment credits" for the cost of apportioned depreciable personal property and depreciable real property located in Michigan. Therefore, we do not believe that severing subsections 23(a) and (c) in their entirety from the SBTA is reasonable in light of the act as originally drafted. Instead, we agree with the argument made by amicus curiae that only the offending clauses should be severed. This means severing the two-factor apportionment from § 23(a) —the last sentence of § 23(a)—and the phrase "provided that the assets are physically located in Michigan" from § 23(c).

This result is in keeping with prior decisions of this Court. For example, in *American Youth Foundation v Benona Twp,* 37 Mich App 722, 723; 195 NW2d 304 (1972), the defendant continually denied the plaintiff, a foreign nonprofit corporation, tax-exempt status on the basis of statutory language exempting from taxation property owned by certain corporations only if they were "incorporated under the laws of this state." The trial court found that denying the plaintiff tax-exempt status merely because it was incorporated in another state violated the Fourteenth Amendment of the federal constitution. The defendant did not appeal that decision. *Id.,* p 724. However, it argued on appeal that because of the unconstitutionality of the statutes, they could not grant tax-exempt status either to domestic or foreign corporations. The trial court disagreed, severing only the clause "incorporated under the laws of this state." *Id.*

A panel of this court also disagreed with defendant, holding:

> The clear and express intention of the Legislature was to exempt *domestic,* nonprofit corporations from taxation. Such a clear expression can be upheld by this Court. Those portions of the statutes in question which remain after severing the "domestic corporation" proviso are still operable and can still implement the intent manifested by the Legislature." [*Id.,* p 725; emphasis in original.]

Also see *Republic Airlines, supra,* pp 685-687.

We acknowledge the Department of Treasury's argument that our "remedy" involves "judicial legislation" and "would probably eliminate any single business tax liability for out-of-state corporations." Our response is that our remedy does not involve "judicial legislation" any more than if we

severed subsections 23(a) and (c) in their entirety, as urged by the department. We also believe it to be less drastic, more in keeping with the legislative intent, and more fair to taxpayers than eliminating the CAD.

We therefore affirm the Court of Claims ruling that its decision operate purely prospectively, but modify its ruling severing subsections 23(a) and (c) in their entirety to the extent that only the offending portions set forth above be eliminated.